# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| MARGARET J. LARLEE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-228-JDL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD"), Disabled Widow's Benefits ("DWB"), and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work as a design specialist, layout artist, supervisor/silk screening, and silk screener. The plaintiff, appearing *pro se*, offers two threshold bases for remand, a proffer of new evidence and a complaint that she was not able to present all of her evidence below. *See* Statement of Errors (ECF No. 23) ¶¶ 1, 4, 8; Fact finding sheet ("Fact Sheet") (ECF No. 23-1), attached thereto, ¶¶ 1-4; *see also* [Complaint] (ECF No. 1) at [1] & ¶¶ 1, 3, 6. She contends, in the alternative, that the administrative law judge erred in finding only one severe impairment, made a flawed credibility determination, improperly weighed the opinion evidence, and erred in rejecting vocational testimony elicited in response to

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 13, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

hypothetical questions posed by her counsel at the time, while relying on testimony to which she did not have an opportunity to respond. *See* Statement of Errors ¶¶ 1-7; Fact Sheet ¶¶ 1, 5-7; Complaint at [1] & ¶¶ 1-7.[2] I conclude that the plaintiff fails to make the showing necessary to justify remand based on a proffer of new evidence or a claim of denial of due process and, in the alternative, fails to demonstrate reversible error in the administrative law judge's decision. Accordingly, I recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, Finding 1, Record at 13; that she had a severe impairment of rheumatoid arthritis with predominantly hand involvement, Finding 5, *id*.; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could not engage in forceful pushing, pulling, gripping, or grasping with her hands, could frequently handle and finger objects, could not climb ladders, ropes, or scaffolds, and needed to avoid vibrating tools, Finding 7, *id*. at 14; that she was capable of performing past relevant work as a design specialist, layout artist, supervisor/silk screening, and silk screener, which did not require the performance of work-related activities precluded by her RFC, Finding 8, *id*. at 16; and that she, therefore, had not been disabled from December 20, 2010, her alleged onset date of disability, through the date of the decision, February 22, 2013, Finding 9, *id*. at 17. The Appeals Council declined to review the decision, *id*.

---

[2] I have largely followed the commissioner's logical method of grouping the points raised in the complaint, statement of errors, and fact sheet. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 26) at 2 & n.1.

at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

 The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Remand Based on New Evidence

The plaintiff appends seven documents to her Statement of Errors. *See* ECF Nos. 23-2 to 23-8. As the commissioner notes, *see* Opposition at 3, three are already of record: notes of a January 12, 2012, office visit with Jeri Wade, FNP, *compare* ECF No. 23-8 *with* Record at 375-77, notes of a January 16, 2013, office visit with neurologist David Burke, M.D., *compare* ECF No. 23-7 *with* Record at 553-56, and a January 29, 2013, Inland Rheumatology clinical visit summary, *compare* ECF No. 23-2 *with* Record at 595. Four documents are new: three Inland Rheumatology clinical visit summaries dated April 4, 2014, August 11, 2014, and November 13, 2014, and an x-ray report dated April 11, 2014. *See* ECF Nos. 23-3 to 23-6.

The plaintiff states that the new documents reflect her misdiagnosis with rheumatoid arthritis (now diagnosed as psoriatic arthropathy) and eczema (now diagnosed as psoriasis), *see* Statement of Errors ¶ 8; Fact Sheet ¶¶ 2, 4, Complaint at [1], and that "[d]iagnostic X-rays show[] that I have advanced osteoarthritis changes at the right hip joint[,]" Fact Sheet ¶ 3.[3]

The plaintiff's proffer of new evidence implicates sentence six of 42 U.S.C. § 405(g), although she does not cite it. Pursuant to that provision, "[t]he court may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to

---

[3] At oral argument, the plaintiff stated that she recently had an MRI done that documented osteoarthritis in her spine, was scheduled on April 20, 2015, to undergo hip replacement surgery, and had testing that demonstrated that her liver was "compromised." Because the purpose of oral argument is to argue the case, not to present new evidence, and the plaintiff has not in any event provided records documenting those latest developments, they are not properly before the court. As counsel for the commissioner pointed out at oral argument, the plaintiff is free to file new applications for SSD, SSI, and/or DWB benefits.

incorporate such evidence into the record in a prior proceeding." *McDonald v. Social Sec. Admin. Comm'r,* No. 1:09-cv-473-JAW, 2010 WL 2680338, at *2 (D. Me. June 30, 2010) (rec. dec., *aff'd* July 20, 2010) (citation and internal punctuation omitted).

> Typically, a request for a sentence-six remand concerns new evidence presented after the ALJ [administrative law judge] decision. Sentence six allows for a pre-judgment remand and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. On a cautionary level, the First Circuit has observed that Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security appeals. Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is material, as in necessary to develop the facts of the case fully. New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing; that the earlier decision might reasonably have been different had the evidence been considered by the Commissioner. There is a temporal concern, as well. The evidence must be material to the issue of the claimant's condition during the time period for which benefits were denied, as opposed to the development of a new disability.

*Id.* (citations and internal punctuation omitted).

The commissioner contests the materiality of the new evidence, contending that the plaintiff falls short of showing that the two changes in diagnosis are significant and that the diagnosis of osteoarthritis of the hip, which was made more than a year after the date of the administrative law judge's decision, bears on her condition during the time period for which benefits were denied (from her alleged onset date of disability on December 20, 2010, through the date of the decision, February 22, 2013). *See* Opposition at 3-6.

The commissioner is correct that nothing in the new documents reflects any difference in the plaintiff's condition as the result of the changes in diagnosis to which she points or makes clear that, on or before February 22, 2013, she suffered from osteoarthritis of the hip affecting her functioning sufficiently that the decision might reasonably have been different had the hip x-ray

been considered.  *See* ECF Nos. 23-3 to 23-6.  It is true that the April 11, 2014, diagnostic hip x-ray revealed "[a]dvanced osteoarthritic changes at the right hip joint[,]" including "marked narrowing of the right hip joint superiorly."  ECF No. 23-5.  However, even granting that one can reasonably infer that this condition began some time prior to the date of the x-ray, the plaintiff points to no specific record evidence bearing on the manner in which her hip osteoarthritis affected her functioning on or before February 22, 2013.  She, thus, fails to demonstrate that the new evidence is "material to the issue of [her] condition during the time period for which benefits were denied" or might reasonably have altered the outcome of the decision had the administrative law judge considered it.  *McDonald*, 2010 WL 2680338, at *2 (citation and internal quotation marks omitted).  *See also, e.g.*, *Lacadie v. Town of Milford*, Civ. No. 07-101-B-W, 2008 WL 1930410, at *6 n.8 (D. Me. May 1, 2008) (rec. dec., *aff'd* June 19, 2008) ("Courts are not required or even expected to independently sift through the record in search of evidence that might salvage a *pro se* plaintiff's case.").[4]

### B.  Remand Based on Denial of Opportunity To Present Full Case

The plaintiff also complains that she was "not made aware of or given the opportunity to respond to some of the points that the Judge based his decision on[,]" Statement of Errors at [1], and was "told by [her] lawyer not to spe[a]k[,]" as a result of which a lot of important things were

---

[4] In any event, my own review of the record does not demonstrate that "the earlier decision might reasonably have been different" had the 2014 x-ray evidence been considered.  *McDonald*, 2010 WL 2680338, at *2 (citation and internal quotation marks omitted).  At oral argument, the plaintiff contended that she had been complaining about hip pain for a very long time and that the x-ray bolstered the credibility of her complaints.  Yet, the administrative law judge relied in part on her subjective complaints in assessing her claimed hip pain, stating that she "testified that she has some pain and stiffness in her hips, shoulders, back and lower extremities, but that her arthritic symptoms primarily affect her hands."  Record at 15; *see also id*. at 30.  In addition, agency examining consultant Stacie Kunas, FNP-C, found on September 6, 2011, that, although the plaintiff's bilateral hip range of motion was slightly restricted, lacking the last 10 degrees in all directions, she ambulated with a steady gait and no use of an assistive device, was able to perform a good heel-to-toe walk, had 5/5 strength in her lower extremities, and was able to get up and down from the examination table without difficulty.  *See id*. at 367.  Dr. Burke, a treating source, also noted on January 16, 2013, that a motor examination of the plaintiff demonstrated normal muscle tone and bulk, with 5/5 strength and intact sensation in the lower as well as upper extremities, and that she had normal coordination, gait, and tandem gait.  *See id*. at 555.

misjudged and not said, Complaint at [1]. These complaints seemingly implicate the plaintiff's right to due process, and I will treat them as such.

In circumstances in which an administrative law judge has offered what amounts to reasonable notice and opportunity to be heard, there is no underlying due process violation. *See, e.g., Richardson,* 402 U.S. at 404–05 (holding that procedural due process had been afforded in case in which Social Security applicant claimed lack of opportunity to cross-examine reporting physicians but had not taken advantage of opportunity to request that they be subpoenaed; noting, *inter alia,* "This inaction on the claimant's part supports the Court of Appeals' view that the claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination .") (citation omitted).

The plaintiff complains that she wanted to inform the administrative law judge about her fibromyalgia and its effect but that her attorney told her to let the medical records speak for themselves. *See* Complaint ¶ 6. As the commissioner observes, *see* Opposition at 2-3, to the extent that the plaintiff complains that her own attorney prevented her from speaking, the commissioner cannot be held responsible for the impediment. To the contrary, as the commissioner points out, *see id.* at 2, the administrative law judge encouraged the plaintiff at the outset of her hearing to "speak up" if there were "some things particularly critical about your claim for disability benefits that we don't cover with you[,]" Record at 22.

The plaintiff further complains that she was not allowed to see the report of agency examining consultant Kunas in advance of her hearing or told that the judge would be relying on it, preventing her from rebutting a statement by Kunas that she (the plaintiff) was able to fill out paperwork without difficulty. *See* Statement of Errors ¶ 1; Complaint ¶ 3. However, the plaintiff identifies no conduct on the part of the commissioner preventing her from reviewing the Kunas

report prior to her hearing, and the commissioner represents that the plaintiff's counsel would have had access to its contents. *See* Opposition at 14. Even assuming that the administrative law judge knew, in advance of or during the plaintiff's hearing, that he would attach particular weight to the Kunas report, claimants are not entitled to a preview of a judge's likely ruling. An administrative law judge's duty is to weigh the totality of the evidence, render a decision, and provide a claimant with notice of that decision. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); 20 C.F.R. §§ 404.953(a), 416.1453(a) (administrative law judge must issue a written decision and mail copies to parties at their last known addresses). The administrative law judge did so in this case.

The plaintiff finally complains that she was not given the opportunity to respond to the vocational expert's testimony that she was capable of performing certain past relevant work. *See* Statement of Errors ¶ 4; Complaint ¶ 1. However, the administrative law judge both permitted her attorney to question the vocational expert and, before closing the hearing, inquired whether he had anything further to present. *See* Record at 43-45. There is no evidence that the administrative law judge did anything to prevent the plaintiff from testifying on this, or any other, subject matter. *See id*.

In short, the plaintiff has not shown that she was deprived of due process in the adjudication of her disability claim.

## C. Remand Based on Asserted Errors in Decision

### 1. Failure To Find Numerous Severe Impairments

The plaintiff next argues that the administrative law judge violated Social Security Ruling 96-3p ("SSR 96-3p") in failing to find that she had severe impairments of migraine headaches, familial tremors, nocturnal myoclonus, anxiety disorder, attention deficit hyperactivity disorder ("ADHD")/attention deficit disorder ("ADD"), demyelinating disease, or fibromyalgia. Statement of Errors ¶ 3; Fact Sheet ¶¶ 1, 5-6; Complaint at [1] & ¶¶ 2, 6. She asserts that she has suffered from some of those conditions her entire life, and "they have greatly interfered with my school and work performance in the past." Statement of Errors ¶ 3. She adds that the administrative law judge's finding that her mental impairments were nonsevere and her complaints were out of proportion is "an opinion not supported by facts." *Id*. ¶ 5.

The administrative law judge stated:

> The [plaintiff] has . . . indicated that demyelinating disease, headaches, familial tremor, nocturnal myoclonus, social anxiety, attention deficit hyperactivity disorder and depression contribute to her alleged disability. Although neurologist David Burke, M.D., suspected that [she] might have a demyelinating disease based on her reported symptoms during an evaluation done in January 2013, there is no medical evidence which establishes that she has such an impairment. Dr. Burke also assessed the [plaintiff] with nocturnal myoclonus, familial tremor and headache syndrome; however, the longitudinal evidence does not show that any of these impairments has limited the [plaintiff's] work capacity more than slightly for at least 12 consecutive months; therefore, they are not "severe."

> The [plaintiff] has been prescribed medication and received counseling for depression. However, her medically determinable mental impairment of depression NOS [not otherwise specified] does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere.

> ***

> Although Ms. Charest [Christine Charest, LMFT] has assessed the [plaintiff] with attention deficit hyperactivity disorder, Ms. Charest is not an acceptable medical source and the evidence does not show ADHD to be a medically determinable

impairment. The evidence also does not show that the [plaintiff] has been diagnosed with an anxiety-related disorder by an acceptable medical source.

Record at 13-14 (citations omitted).

Step 2 (severity) determination entails assessment of (i) whether a claimant has a medically determinable impairment, (ii) if so, whether that impairment reasonably could be expected to produce the alleged symptoms, and (iii) "once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) . . . along with the objective medical and other evidence[.]" SSR 96-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014), at 117.

The administrative law judge's determination complied with this ruling. He found that three of the impairments at issue, demyelinating disease, ADHD/ADD, and anxiety, were not medically determinable impairments, a circumstance in which an impairment cannot be found to have been severe. *See id.* ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s)[.]"); *see also, e.g., Blackmore ex rel. JS v. Astrue*, Civil No. 09-385-P-S, 2010 WL 2674594, at *3 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010) ("In the absence of a medically determinable impairment, a claimant's symptoms are rightfully ignored[.]").

The administrative law judge found that, while Dr. Burke suspected that the plaintiff had demyelinating disease, no medical evidence established that she did. With respect to this disorder, the plaintiff points only to the January 16, 2013, progress note of Dr. Burke that is of record, in which Dr. Burke indicated that he was ordering various imaging studies with respect to

demyelinating disease. *See* Fact Sheet ¶ 6; ECF No. 23-7; Record at 555. She points to no evidence that these imaging studies were performed or, if so, that they led to a conclusive diagnosis. The administrative law judge also determined that, while one provider, Charest, had diagnosed the plaintiff with ADHD, she was not an "acceptable medical source" for purposes of establishing a medically determinable impairment, and no acceptable medical source had diagnosed the plaintiff with an anxiety disorder. Record at 14. He was correct. Charest is an "LMFT," or licensed marriage and family therapist. *See* Record at 535; 32 M.R.S.A. § 13851(7). For purposes of an award of Social Security disability benefits, therapists are not among the listed medical sources who can establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).[5]

The administrative law judge did find that the plaintiff had medically determinable impairments of nocturnal myoclonus, familial tremor, and headache syndrome, but that they were not severe because the longitudinal evidence did not show that any of them had limited her work capacity more than slightly for at least 12 consecutive months. *See* Record at 13. With respect to these conditions, the plaintiff also points to the January 16, 2013, note of Dr. Burke. *See* Fact Sheet ¶ 6; ECF No. 23-7. While she did complain on that date to Dr. Burke that some of her symptoms dated back two to three years and that her headaches had been lifelong, *see* Record at 553, she points to no evidence that she had complained of these conditions to treating providers or sought treatment for them on an ongoing basis. She, therefore, fails to make a persuasive case that the administrative law judge erred in finding that she had not established that any of those

---

[5] With respect to her mental impairments, the plaintiff cites, *inter alia*, an exhibit indicating that her treating nurse practitioner, Wade, diagnosed her with anxiety and questioned whether she had ADD. *See* Fact Sheet ¶ 5 (citing, *inter alia*, Exhibit 10F at 3); Record at 435. Nurse practitioners, like therapists, are not listed among acceptable medical sources for purposes of establishing the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). In addition, Wade merely questioned whether the plaintiff had ADD. *See* Record at 435. She did not diagnose it. *See id.*

conditions limited her work capacity more than slightly for at least 12 consecutive months. *See*

*Lacadie*, 2008 WL 1930410, at *6 n.8.

The administrative law judge also found a medically determinable impairment of

depression, but deemed it nonsevere based on his analysis of the four broad functional areas

relevant to the assessment of the impact of mental impairments: activities of daily living, social

functioning, concentration, persistence, or pace, and episodes of decompensation. *See* Record at

13-14. He explained:

> [T]he evidence does not show that the [plaintiff] has any mentally-based problems
> carrying out daily activities. She has been the caretaker for her two grandchildren,
> currently ages 6 and 14, since 2009, and has recently acquired legal custody of
> them, which tends to refute the notion that she has any significant limitation in her
> daily functioning. Her therapist, Christine Charest, L.M.F.T., has indicated that
> [she] would have no problems interacting appropriately with coworkers,
> supervisors or the general public. The medical record does not document ongoing
> complaints by the [plaintiff] of an inability to maintain concentration, persistence
> or pace on tasks due to psychological symptoms. She has not required emergency
> medical attention or inpatient treatment due to mental distress. She has reported
> improvement in her symptoms with medication.

*Id*. at 13-14 (citations omitted).

The plaintiff complains that the administrative law judge erred in crediting parts of

Charest's opinion while dismissing the remainder, which supported her disability claim, *see*

Complaint at [1], and in relying in part on her care of her two grandchildren to discredit her claim,

*see* Statement of Errors ¶ 6. As the commissioner observes, *see* Opposition at 14, an administrative

law judge need not credit a medical source's opinion in total; he or she can rely in part on such an

opinion, *see, e.g., Evangelista v. Secretary of Health & Human Servs.,* 826 F.2d 136, 144 (1st Cir.

1987) ("The basic idea which the claimant hawks – the notion that there must always be some

superevaluator, a single physician who gives the factfinder an overview of the entire case – is

unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter.");

*Kaylor v. Astrue*, No. 2:10-cv-33-GZS, 2010 WL 5776375, at *4 (D. Me. Dec. 30, 2010) (rec. dec.,

*aff'd* Feb. 7, 2011) ("[A]n administrative law judge may pick and choose among portions of expert opinions[.]").

Nor was there error in relying in part on the plaintiff's care of her two grandchildren. An administrative law judge may draw reasonable inferences regarding a claimant's level of restriction in activities of daily living based in part on his or her ability to care for children. *See, e.g., Anderson v. Astrue*, No. 1:11-cv-109-DBH, 2012 WL 283018, at *5 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Feb. 17, 2012) (while activities of daily living, standing alone, are not adequate evidence of ability to undertake full-time employment, administrative law judge properly considered them in assessing the credibility of her allegations and resolving conflicts in medical opinion evidence).[6]

The plaintiff correctly observes that the administrative law judge made no mention of fibromyalgia. *See* Statement of Errors ¶ 3; Complaint at [1] & ¶ 6; Fact Sheet ¶ 1; Record at 13-14. However, as the commissioner points out, *see* Opposition at 10, the plaintiff acknowledges that, on advice of counsel, she never called to the administrative law judge's attention any claim of disability stemming from fibromyalgia, *see* Complaint ¶ 6. "When a claimant is represented, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v. Commissioner*

---

[6] The plaintiff cites several record exhibits in support of her challenge to the finding that her mental impairments were nonsevere, including pages 3, 5, and 9 of Exhibit 6F, page 22 of either Exhibit 6F or 10F (it is not clear which), page 3 of Exhibit 10F, and page 1 of Exhibit 16F (mistakenly referred to as 16G). *See* Fact Sheet ¶ 5. Neither Exhibit 6F nor Exhibit 10F has as many as 22 pages. Nothing in the remaining cited exhibits, apart from an opinion of Charest dated October 20, 2012, speaks to functional limitations imposed by the plaintiff's depression. *See* Record at 377, 379, 383, 435, 535-38. Charest indicated that the plaintiff's symptoms included sad/low mood, no energy, lack of motivation, difficulty with focus, racing thoughts, easy distraction, motor hyperactivity, struggles to manage stress, and irritability. *See id.* at 535. She stated that the plaintiff had significant problems with concentration, persistence, and pace, affecting her ability to attend to tasks. *See id.* at 536. However, for the reasons discussed below, the administrative law judge supportably ascribed little weight to the Charest opinion.

*of Soc. Sec.*, No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998). The administrative law judge, thus, did not err in failing to address the condition.

In any event, as the commissioner suggests, *see* Opposition at 11-12, even if the administrative law judge did err, any error was harmless. While the plaintiff states that two different rheumatologists confirmed her diagnosis of fibromyalgia, *see* Complaint ¶ 6, the only apparent references to the condition in the record are in a January 29, 2013, Inland Rheumatology test order form and clinical visit summary, *see* Record at 593-95. The test order form reflects a diagnosis of "? of fibromyalgia[,]" and the clinical visit summary adds fibromyalgia to a list of "problems associated with your visit[,]" stating that the plaintiff's "pain is more consistent today with fibromyalgia as well as RA [rheumatoid arthritis]." *Id.*

As the commissioner argues, *see* Opposition at 11, this appears to have been either a provisional or a newly differentiated diagnosis. If it was provisional, it could not have been found to have been a medically determinable impairment. *See, e.g., Coleman ex rel. A.P. v. Astrue*, Civil No. 09-8-P-H, 2009 WL 3517583, at *2 (D. Me. Oct. 29, 2009) (rec. dec., *aff'd* Nov. 17, 2009) ("An entry ruling out a particular ailment or condition is not a diagnosis of that ailment or condition.") (citation and internal punctuation omitted). If it was a newly differentiated diagnosis, the plaintiff's symptoms and limitations presumably would have been the same as from rheumatoid arthritis and, accordingly, already were taken into consideration. Any error in failing to consider whether the plaintiff had a severe impairment of fibromyalgia, hence, was harmless.

For all of these reasons, there was no reversible error in the administrative law judge's failure to find severe impairments of migraine headaches, familial tremors, nocturnal myoclonus, anxiety disorder, ADHD/ADD, demyelinating disease, or fibromyalgia.

## 2. Credibility Determination

The administrative law judge noted that the plaintiff had "testified that she has some pain and stiffness in her hips, shoulders, back and lower extremities, but that her arthritic symptoms primarily affect her hands[,]" with "hand pain and diminished dexterity interfer[ing] with her ability to persist at tasks requiring hand use." Record at 15. He observed that she had complained of "problems with activities such as gripping a steering wheel, buckling a seatbelt, typing and zipping up her grandson's coat[,]" increased discomfort, obliging her to move around, if she "remain[ed] in one place for long[,]" "pain-related concentration difficulties[,]" and "occasional tremors of the hands and head." *Id.* However, he deemed her allegations "not entirely credible" on the bases that they were out of proportion to objective medical findings, which included reported improvement in symptoms with appropriate treatment, and that her "allegation of disability [was] undermined by her ability to meet the demands of serving as caretaker for her two grandchildren, which she apparently did well enough to prevail in a custody battle for them." *Id.* at 15-16. His summary of the medical evidence included the following regarding Junas's September 2011 report of examination:

> Stacie Junas, F.N.P., examined the [plaintiff] in September 2011 and noted that she had intact upper and lower extremity strength, no muscle atrophy, and was able to write to complete paperwork without assistance. Nurse Junas observed that the [plaintiff] displayed some decreased manual dexterity, but that it was apparently due to her subjective report of finger pain rather than mechanical limitation of joint function/movement due to RA. Nurse Junas observed that, while the [plaintiff's] subjective complaints appeared to be "quite bothersome," the "overall objective examination (was) fairly unremarkable."

*Id.* at 15.

The plaintiff asserts that, if the administrative law judge had made her aware of Junas's report, she would have informed him that she "told the specialist that I could not lift the clipboard and I apologized for how messy it was and that before leaving I told her that I wasn't able to finish

filling out the paperwork and I would work at it again." Complaint ¶ 3. She adds that she would have told the administrative law judge that Junas "hollered at me because I had become withdrawn." *Id*. She contends that the fact that, as of the time that she was examined by Junas, she had only just begun taking medication and it had not started to work, further proves that Junas lied about her condition. *See id*. *See also* Statement of Errors ¶ 1 ("The judge put too much weight in considering the nurse report [of] the State agency medical consultant. I never saw the report nor did I have a chance to tell my experience of that appointment.").

This challenge falls short. As noted above, the commissioner did not deny the plaintiff access to the Junas report prior to her hearing. The plaintiff had access through her then-counsel. That the plaintiff claims to have been experiencing intense pain at the time of the Junas examination does not demonstrate that Junas was lying. As the administrative law judge noted, *see* Record at 15, Junas relayed the plaintiff's complaints of "quite bothersome" symptoms, in addition to reporting her own findings on objective examination.

The plaintiff further complains that the administrative law judge "used the fact that I have two Children that I care for as a point to discredit my claim." Statement of Errors ¶ 6. She elaborates:

> Using the fact that I have custody of my two grandchildren should not be used as a determining factor for receiving SSDI or not. I should not have to feel defensive in this matter. I was the only one willing to take in the two children, who without me would go into foster care with people they did not know and most likely be separated. When the judge asked me if my condition affected the children in any way I told him that there were things I could not do such as button buttons, zip zippers[,] buckle seatbelt or tie shoes but at the age of five these are things that they should be learning to do on their own. I also let the judge know that I did need help and that I got my daughter to move in my basement to be close by if I need help.

Complaint ¶ 7.

As noted above, it would be error to base a finding of non-disability solely on activities of daily living such as caring for children.  *See, e.g.*, *Anderson*, 2012 WL 283018, at *5.  However, the administrative law judge did not do so.  He summarized the longitudinal medical evidence, as well as drawing inferences from the plaintiff's care of her grandchildren, to assess her credibility and resolve conflicts in the medical opinion evidence.  *See* Record at 15-16.  That is entirely permissible.  *See, e.g., id.*; *Nolan v. Astrue*, Civil No. 09-323-P-H, 2010 WL 2605699, at *7 n.4 (D. Me. June 24, 2010) (rec. dec., *aff'd* July 28, 2010) (administrative law judge permissibly took into consideration claimant's ability to do household chores and care for children in determining whether she was less limited than alleged and assessing her credibility).

The plaintiff finally cites, as proof that she is not exaggerating her condition, the fact that she downplays her mental conditions, a point for which she cites a page from a January 12, 2012, progress note of Wade.  *See* Fact Sheet ¶ 7; Record at 375.  In the cited note, Wade recorded, *inter alia*, that the plaintiff reported "[l]ots of stress with ongoing family issues, caring for grandchildren[,]" had had a counseling session with Charest, and stated that she felt her mood had "definitely improved although [she was] still struggling to accomplish day to day tasks" and thought pain and stiffness contributed.  Record at 374.  Nothing in the note indicates that Wade thought the plaintiff was downplaying her mental conditions, and it is not otherwise apparent that she was.

In any event, even if the note indicated that the plaintiff was downplaying her mental conditions, that would not suffice to overturn the administrative law judge's credibility determination.  "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."  *Frustaglia v. Secretary of Health*

*& Human Servs.,* 829 F.2d 192, 195 (1st Cir.1987). The administrative law judge made specific findings, supported by the longitudinal evidence. Nothing more was required.

### 3. Weighing of Opinion Evidence

The plaintiff next argues that the administrative law judge erred by according too much weight to the opinion of agency nonexamining consultant Lawrence P. Johnson, M.D., and too little weight to the opinion of her treating therapist, Charest. *See* Statement of Errors ¶¶ 2, 7; Complaint at [1] & ¶¶ 4-5. The administrative law judge stated:

> As for the opinion evidence, no medical source who has treated the [plaintiff] for her arthritic complaints has opined that she is disabled from all work. Great weight is given to the opinion of the State agency medical consultant who concluded that the [plaintiff] can perform a wide range of light work (Exhibit 10A) [Dr. Johnson], as that assessment is in accord with the overall evidence for the reasons discussed above. Little weight is given to Ms. Charest's description of the [plaintiff's] limitations (Exhibit 16F), as the evidence does not support a finding that the [plaintiff] has more than a mild degree of functional impairment due to depression, or that she has a medically determinable attention deficit disorder. Furthermore, Ms. Charest is not professionally qualified to assess limitations arising from the [plaintiff's] rheumatoid arthritis, and her comments regarding such limitations appear to be based on the [plaintiff's] description of her difficulties, which, for the reasons discussed above, [is] not entirely credible.

Record at 16.

The plaintiff asserts that the administrative law judge gave no weight to Charest's records and opinions, violating "Social Security Ruling 60-02," and wrongly gave weight to Dr. Johnson's RFC opinion, Dr. Johnson having discredited her complaints of pain based on x-rays taken of her hands on the day of her diagnosis, which were intended to be used as a baseline for comparison with future x-rays. *See* Statement of Errors ¶¶ 2, 7; *see also* Complaint ¶¶ 4-5. She states that "[a] person can suffer with arthritis for years before damage shows up on x-rays." Statement of Errors ¶ 7; *see also* Complaint ¶ 5 ("It was said to me that damage may not show up for years.").

As the commissioner observes, *see* Opposition at 13 n.11, there is no Social Security Ruling 60-02; the plaintiff presumably meant to cite Social Security Ruling 06-03p ("SSR 06-03p"), which pertains to the use of evidence from non-acceptable medical sources, *see* SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014), at 328. That ruling provides, in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id*. at 333.

I find no error. In accordance with SSR 06-03p, the administrative law judge considered Charest's opinion and explained why he gave it little weight. *See* Record at 16. As noted above, he did not err in citing to a portion of Charest's opinion cutting against a finding of disability but declining to adopt portions supporting her claim. *See, e.g., Evangelista,* 826 F.2d at 144; *Kaylor*, 2010 WL 5776375, at *4.

The plaintiff also fails to demonstrate that the administrative law judge erred in relying on the Johnson RFC opinion. Dr. Johnson found the plaintiff's allegations partially credible, noting that the Junas report supported some physical limitations, especially in the plaintiff's hands, and that she might get better control with further therapy. *See* Record at 85. He noted that Junas had found the plaintiff's objective examination fairly unremarkable and that x-rays done of her hands and wrist in March 2011 were all normal. *See id*. at 86. As the commissioner points out, *see* Opposition at 13, Dr. Johnson did not state that the normal x-rays meant that the plaintiff had no

pain in her hands; to the contrary, he deemed her limited in the amount she could lift and unable to do constant repetitive movements with her hands, *see* Record at 85-86. In any event, the plaintiff cites no evidence to support her assertion that the fact that her x-rays were normal in March 2011, when she first was diagnosed with rheumatoid arthritis, should have been found to have no bearing on her claim. That is insufficient to overcome Dr. Johnson's expert judgment, as a "highly qualified physician[] . . . who [is] also [an] expert[] in Social Security disability evaluation[,]" 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i), that the x-rays were among several factors relevant to his assessment of her RFC.

### 4. Reliance on Vocational Expert's Testimony

The plaintiff finally complains that the administrative law judge erred in failing either to adopt testimony of the vocational expert given in response to hypothetical questions posed by her counsel or afford her an opportunity to respond to the vocational expert's testimony given in response to a hypothetical question posed by the administrative law judge. *See* Statement of Errors ¶ 4; Complaint ¶ 1. I find no error.

The responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record. *See, e.g., Arocho v. Secretary of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir. 1982). "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." *Id.*

As noted above, the administrative law judge resolved conflicts in favor of adoption of the Johnson RFC opinion, crediting the plaintiff's allegations only in part. For the reasons discussed above, the plaintiff has failed to demonstrate that those determinations were flawed. Hence, the

administrative law judge did not err in relying on the testimony of the vocational expert predicated on a hypothetical question incorporating his RFC finding.

As also discussed above, the plaintiff fails to demonstrate that she was denied the opportunity to respond to the vocational expert's testimony, in response to the administrative law judge's hypothetical question, that she could perform certain types of past relevant work. To the contrary, the hearing record makes clear that the plaintiff, who was represented by counsel, was afforded an adequate opportunity to present such testimony. *See* Record at 22, 43-45. That she did not cannot be laid at the feet of the commissioner, and does not justify reversal and remand. *See, e.g., Baker v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694, at *5 (D. Me. Mar. 31, 2011) (rec. dec., *aff'd* Apr. 19, 2011) ("There is an expectation that counsel will explore these concerns [about the vocational expert's testimony] with the vocational expert at the hearing, not leave such matters to technical challenges before the courts.").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

   *Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of April, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge